## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MONTEZ ARTIS,                        )
                                     )
       **Plaintiff,**               )
                                     )    No. 1:18-cv-4476
    v.                             )
                                     )    Judge John Z. Lee
WEXFORD HEALTH SOURCES, INC.         )
and SANGITA GARG,                    )
                                     )
       **Defendants.**             )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Montez Artis, an Illinois state prisoner, has brought this suit pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical condition during his time at Stateville Correctional Center ("Stateville"). After four years without a teeth cleaning, a dental check revealed that Artis had cavities and weak enamel. Still, it took another six months until Artis received a teeth cleaning, long after serious pains and aches had developed. He is suing Dr. Sangita Garg, a dentist at Stateville, as well as Wexford Health Sources, Inc. ("Wexford"), a company that contracts with the Illinois Department of Corrections ("IDOC") to provide medical care and treatment to inmates (collectively, "Defendants").

Defendants have moved to dismiss Artis's complaint. For the reasons stated below, their motions are denied.

# I.    Background

## A.    Facts[1]

Artis is currently incarcerated at Stateville Correctional Facility. 2nd Am. Compl. ("Compl.") ¶ 3, ECF No. 70. He was incarcerated in 2004 and remains in custody today. *Id.*

Prior to July 2017, Artis had not had his teeth cleaned since January 2, 2013. *Id.* ¶ 9. In the intervening four years, he made numerous requests to have them cleaned again, but his requests were ignored until July 7, 2017, when Dr. Sangita Garg gave Artis a dental checkup and administered an x-ray. *Id.* ¶¶ 10, 12.

Dr. Garg's examination revealed that Artis had cavities and weak enamel due to his lack of dental treatment. *Id.* ¶ 11. But Garg performed no dental treatment or care for Artis at this appointment, nor did she offer any advice about Artis's hygiene or dental care that might improve his condition. *Id.* ¶ 15. Additionally, the x-rays Dr. Garg took showed exposed roots and gum recession, but Garg failed to make any note of it. *Id.* ¶¶ 28–29. Instead, she told Artis that he would return in two weeks for a cleaning. *Id.* ¶ 13.

Garg was responsible for booking Artis's cleaning, but instead of scheduling him to return in two weeks as promised, she put him at the end of the dental cleaning log, where patients must wait until the next available appointment. *Id.*

---

[1]    The Court "accept[s] as true all well-pleaded facts alleged" in reviewing a motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

¶ 16. This was in spite of her typical practice of offering patients an immediate appointment if they had urgent dental concerns, such as "gum issues, swollen gums, or heavy calculus." *Id.* ¶ 18.

After a month had passed, Artis followed up with Dr. Garg. But she told him that scheduling teeth cleanings was not her job. *Id.* ¶ 20.

Nearly three months after the July 7 checkup, on September 26, 2017, Artis filed a grievance stating that he had begun to feel severe oral pain and aches. *Id.* ¶ 21. By then, his pain was so severe that it could reach a 7, 8, or 9 out of 10 depending on which food or liquids he consumed. In fact, Artis could no longer consume many of his preferred food and beverages (like hot coffee), nor speak in cold weather, because of the severe dental pain. *Id.*

Another three months passed without a cleaning, until, on December 17, 2017, Artis filed another grievance, describing his severe dental pain in more detail. *Id.* ¶ 22.

Artis finally received a teeth cleaning on January 10, 2018, more than six months after his visit with Garg. *Id.* ¶ 23. Garg acknowledges that six months is an unusually long time to get to the top of the cleaning log, and she admits that she scheduled an appointment for Artis only after reviewing the second grievance. *Id.* ¶ 25.

Artis had another appointment with a different dentist later that year, in November 2018. *Id.* ¶ 26. That dentist, Dr. Saffold, noted that Artis's x-rays from July 2017 and January 2018 showed exposed roots and gum recession, which

explained Artis's pain. *Id.* ¶¶ 27–30. Dr. Saffold applied a sensitivity coating to Artis's teeth and advised him to use a soft toothbrush and Sensodyne toothpaste. *Id.* ¶ 30. Dr. Saffold was the first person to explain to Artis why he was suffering from oral pain.

In February 2019, Artis had a dental appointment with another dentist, Dr. Orenstein, who also noted generalized recession and bone loss in Artis's teeth. *Id.* ¶ 31. He, too, treated Artis's teeth by applying a sensitivity coating. *Id.*

## B. Procedural History

Artis initiated this civil rights action *pro se* against Garg and Wexford under 42 U.S.C. § 1983. By order dated August 21, 2018, the Court dismissed Artis's complaint for failure to state a claim after screening it pursuant to 28 U.S.C. § 1915A. *See* 8/21/18 Order, ECF No. 6. Because Artis alleged that he suffered only from tooth sensitivity and cavities of unspecified severity, the Court held that the complaint did not adequately plead that he suffered a serious medical need. *Id.* at 4. Without more, the Court found that a six-month wait for a dental cleaning did not trigger constitutional concerns. *Id.*

Artis subsequently filed an amended complaint. In it, he removed Garg as a defendant and replaced her with Dental Assistant Christine Luce because he believed that Luce, not Garg, was responsible for scheduling inmates for dental treatment. *See* 11/13/18 Order, ECF 12. The Court determined that the amended complaint stated a claim and allowed Artis to proceed, noting that "[f]urther

inquiry into what role Luce and Wexford's staffing and cost-control practices played in Artis's dental care . . . is warranted." *Id.* at 3.

The Court appointed counsel for Artis, and the case proceeded through discovery, which closed at the end of February 2020. On September 21, 2020, Artis moved for leave to file a Second Amended Complaint dismissing his claims against Luce and substituting in Garg because discovery revealed that Garg was, in fact, responsible for scheduling Artis's dental treatment.

The Court permitted Artis to file the Second Amended Complaint, which Garg and Wexford now move to dismiss for failure to state a claim.

## II.  Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

### III.   Analysis

Defendants argue that Artis's § 1983 claims must be dismissed for failure to state a claim. The Court will first address Artis's claim against Garg, and then Wexford.

### A.   Dr. Sangita Garg's Motion to Dismiss

The Eighth Amendment's "elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble* 429 U.S. 97, 103 (1976). Although "an inadvertent failure to provide adequate medical care," does not violate the Constitution, it nevertheless prohibits the "unnecessary and wanton infliction of pain." *Id* at 105. Thus, "[p]rison officials violate the . . . proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley,* 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle*, 429 U.S. at 104). In other words, to prevail, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir.

6

2008).  Garg asserts that Artis has failed to adequately allege both elements.  The Court will address each in turn.

### 1.    Artis has adequately alleged that he had an objectively serious medical need.

A  prisoner  must  first  demonstrate  that  his  medical  condition  was "objectively, 'sufficiently serious.'"  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."  *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).  The following factors are indicative of a serious medical condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment  or  treatment;  the  presence  of  a  medical  condition  that  significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Id.* at 522–23 (cleaned up).

As particularly instructive here, the Seventh Circuit has recognized that "dental care is one of the most important medical needs of inmates."  *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001) (cleaned up).  Furthermore, in *Board v. Farnham*, the Seventh Circuit found that a jail's failure to provide toothpaste "pose[d] a[n] . . . unreasonable risk of serious damage to [an inmate's] future health," analogous to the failure to provide an adequately nutritious diet, because both combat illness and prevent future health complications.  394 F.3d 469, 482 (7th Cir. 2005).  The court noted, "the neglect of one's dental hygiene can, and

7

frequently does, result in objectively serious dental and medical problems," "such as tooth decay and gum infections." *Id.*

Garg attempts to distinguish *Farnham* on the ground that, there, the condition of the inmate's teeth was much more serious than what Artis alleges. In *Farnham*, teeth that the plaintiff believed had been surgically removed in fact had been merely broken off below the gumline, posing a risk of life-threatening infection and possibly death. *Id.* at 480. Nonetheless, *Farnham* stands for the proposition that "a condition such as tooth decay or gum infection, [is] serious because of the substantial risks to health if left untreated." *See Greene v. Pollard*, 335 F. App'x 612, 614 (7th Cir. 2009) (citing *Farnham*, 394 F.3d at 482–83); *cf. Farnham*, 394 F.3d at 479 ("The Eighth Amendment protects a detainee not only from deliberate indifference to his or her *current* serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to *future* health.")).

Although dental sensitivity, without more, is not a sufficiently serious medical condition, *Greene*, 335 F. App'x at 614, the Seventh Circuit has urged that "[t]he risks posed by tooth loss, the most common cause of which is periodontal disease . . . cannot be underestimated," *Farnham*, 394 F.3d at 480 n.4 (citing Harrison's Principles of Internal medicine (15th ed. 2001)); *see also* 1 Samuel C. Durso et al., Harrison's Principles of Internal Medicine 236 (19th ed. 2015) (noting that gingival pockets, *i.e.*, receding gums, are a consequence of periodontal disease). And, in this Circuit, "dental pain accompanied by various degrees of

8

attenuated medical harm may constitute an objectively serious medical need." *Farnham*, 394 F.3d at 480.

Artis alleges that he suffered from cavities, weak enamel, gum recession, and exposed roots. Compl. ¶¶ 11, 28. He asserts that these conditions were apparent at the time of his July 7, 2017, checkup based on Dr. Garg's examination and the x-rays she took. *Id.* And he states that Garg herself recognized that Artis's dental complaints were serious because she concluded that the conditions "mandate[d] treatment" when she told Artis that she would schedule him for a teeth cleaning sometime in the two weeks after his checkup. *Id.* ¶ 13; *see Hayes*, 546 F.3d at 522 ("A serious medical condition is one that has been diagnosed by a physician as mandating treatment." (cleaned up)). Furthermore, the complaint implies Garg's tacit acknowledgment that "gum issues" are serious by alleging that it is her practice to schedule an appointment to treat such issues instead of placing a patient at the bottom of the log. Compl. ¶ 18.

Given the risks posed by gum recession and exposed roots, and the agony that Artis reports he ultimately experienced, the Court concludes that he has sufficiently alleged a serious medical condition based upon the allegations in the complaint. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that the withholding of toothpaste that caused gum recession, bleeding of the gums, and tooth decay raised a genuine issue of fact as to whether the plaintiff suffered serious harm); *cf. Suleiman v. Wexford Health Source, Inc.*, No. 18 CV 50007, 2021 WL 1121119, at *4 (N.D. Ill. Mar. 24, 2021) (finding no serious medical

condition where plaintiff's gum disease was not causing him regular pain, the dentists administered cleanings, and the dentists advised plaintiff of dental hygiene he could implement to reverse the gum disease).

### 2. Artis has adequately alleged that Dr. Garg was deliberately indifferent to his serious medical needs

The second element of Artis's Eighth Amendment claim requires him to establish that the official had a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297. Thus, to survive the motion to dismiss, Artis must allege facts that plausibly indicate that Garg showed deliberate indifference to his ailments. Deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability will follow only when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Prison officials can be deliberately indifferent through "delaying access to medical care." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009). The Seventh Circuit has recognized that "delays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim." *Id* at 829. There is no bright-line rule regarding how long a delay must be before it constitutes deliberate indifference, because whether a delay is tolerable under the Constitution "depends on the seriousness of the

condition and the ease of providing treatment." *McGowan*, 612 F.3d at 640. Notably, however, it must be "the delay (rather than the inmate's underlying condition), [that] cause[s] some degree of harm." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). That is, the delay itself must be detrimental to the prisoner's health. *Id.*

Garg argues that the complaint fails to make out a claim for deliberate indifference for two reasons. First, Garg claims that Artis did not complain to her of any aches or pains during the July appointment. And, second, Artis concedes that Garg put his name on the cleaning log.

As to Garg's first argument disputing whether Artis complained to her of oral pain, Artis does, in fact, assert that at the July 7, 2017, checkup, he was already experiencing sensitivity in his teeth. He also states, "I knew something was funny, and I told her that." Compl., Ex. C, Artis Dep. at 50:2–20, ECF No. 70-3.[2] And, in any event, Dr. Garg herself informed Artis that he had cavities and weak enamel, and the x-rays she took revealed his gum recession and exposed roots. Compl. ¶¶ 11, 28. As such, Artis has adequately alleged that Garg was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *See Farmer*, 511 U.S. at 837.

---

[2] Garg points to her own deposition transcript to assert that Artis did not complain of any pain during his checkup. Def. Garg's Mot. Dismiss at 6, ECF No. 82 (citing Compl., Ex. D, Garg Dep. at 56:14–24, ECF No. 70-4). But if a plaintiff contradicts assertions made in documents attached to the complaint, courts "would in the usual case be obliged to credit [that] denial on a motion to dismiss." *Williamson v. Curran*, 714 F.3d 432, 446 (7th Cir. 2013). Because elsewhere in his complaint Artis contradicts Garg's deposition testimony, the Court will disregard Garg's deposition testimony and credit Artis's other allegations.

As for Garg's subjective state of mind, the complaint alleges that she informed Artis that he would be seen for a cleaning two weeks after her July 7 examination of him, and Garg admits that she typically schedules for an immediate appointment inmates who exhibit "gum issues, swollen gums or heavy calculus." Compl. ¶¶ 13, 18. As discussed above, Artis's gum recession and exposed roots fall under the category of "gum issues." As such, it is reasonable to infer that Garg not only was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that she in fact "dr[ew]the inference." *See Farmer*, 511 U.S. at 837.

Given that Garg herself drew the inference that the condition of Artis's gums posed a substantial risk, the fact that she merely placed him at the bottom of the cleaning log to wait until the next available appointment, Compl. ¶ 19, tends to show that she "disregard[ed]" that risk, *see Farmer*, 511 U.S. at 837. Moreover, Garg's argument ignores the allegations that Artis followed up with her in August and informed her that his teeth and pain were growing worse. Artis Dep. at 59:2–16. And Garg similarly neglects to address Artis's September grievance, which also complained of severe aches and pains. Compl. ¶ 21. "Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (cleaned up). As such, although Garg attempts to cast any failure to adequately address Artis's dental issues as mere inadvertence or negligence,

12

Artis has adequately alleged that Dr. Garg intentionally delayed his access to care for a painful medical condition.

Furthermore, as noted above, "the length of delay [in treatment] that is tolerable" under the Eighth Amendment "depends on the seriousness of the condition and the ease of providing treatment." *McGowan*, 612 F.3d at 640. In addition to alleging that Dr. Garg should have ensured that his teeth were professionally cleaned more promptly, Artis alleges that she could, at a minimum, have applied sensitivity coating to his teeth or advised him to use a soft toothbrush and Sensodyne toothpaste to manage any sensitivity and prevent further harm. Compl. ¶ 48. While the complaint is silent on the feasibility of an impromptu application of sensitivity coating, it obviously would have been easy to tell Artis to use a different toothbrush and toothpaste. Weighing the ease of such advice against the serious pain that Artis ultimately claims to have suffered, the Court finds that Artis also has plausibly alleged deliberate indifference stemming from Garg's alleged failure to take such simple steps.[3]

---

[3] In her motion to dismiss, Dr. Garg argues that she at least told Artis that he should be flossing, citing to an excerpt from the transcript of her own deposition. *See* Def. Garg's Mot. Dismiss at 6 (citing Garg Dep. at 56:14–24). But Garg has not moved for summary judgment, and at the motion to dismiss stage, the Court will credit the plaintiff's account if documents he attached to the complaint contradict his other allegations. *See Williamson*, 714 F.3d at 446. *Compare* Compl. ¶ 15 ("Defendant Garg performed no dental treatment or care for Plaintiff at this appointment, nor did she recommend to Plaintiff that he undertake any new or different dental care or hygiene.") *with* Compl., Ex. D., 56:14–24 (reading from her notes dated July 7, 2017, Dr. Garg testified: "I did a biannual exam. We took x-rays, discussed oral hygiene, stressed flossing.").

Artis has met his burden to allege facts that, taken as true, plausibly indicate that Garg showed deliberate indifference to his objectively serious medical need. Thus, Garg's motion to dismiss is denied.

**B.    Wexford Health Sources, Inc. Motion to Dismiss**

Wexford moves to dismiss Artis's § 1983 claim on the ground that he has failed to plausibly allege *Monell* liability. Wexford is a private corporation that has contracted with Stateville to provide medical services. Compl. ¶ 4. "Such contractors are treated the same as municipalities for liability purposes in a § 1983 action." *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). And, because there is no *respondeat superior* liability under *Monell*, Artis must identify a Wexford policy that caused his harm. *Monell v. Dep't of Social Servs. of City of N.Y.,* 436 U.S. 658, 691 (1978).

"A plaintiff can establish an official policy through '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Teesdale v. City of Chi.,* 690 F.3d 829, 833–834 (7th Cir. 2012) (quoting *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). Once this official policy is established, Artis must prove that the policy was the "moving force" behind his constitutional injury. *City of Canton v. Harris*, 498 U.S. 378, 379 (1989).

### 1.   Artis has not adequately alleged an express policy that causes a constitutional deprivation when enforced

Wexford argues that Artis's complaint fails to identify any express policy that is the causal link between Garg's actions and his injuries.  That argument is well-taken.  In rebuttal, Artis cites to his allegation that "Wexford maintained a uniform practice and policy of minimizing costs in a manner that resulted in the reckless disregard of the needs of inmates."  Compl. ¶ 38.  According to Artis, this policy includes "refusing or delaying treatment; ignoring prisoner requests for dental care; and failing to create policies competent to treat patients' serious medical needs."  *Id.*

But these allegations fail to identify any *express* policies that caused the harm; rather, Artis simply identifies the harms themselves.  If harms alone were sufficient in identifying an express policy, then the requirement under *Monell* that a plaintiff identify "evidence that there is a true municipal [or corporate] policy at issue, not a random event," would collapse.  *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).  While "an unconstitutional policy can include both implicit policies as well as a gap in expressed policies," Artis must identify the gaps.  *See Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016).  The bare allegation that there exists an unconstitutional policy that informed Garg's conduct, without identifying said policy, is too conclusory to support his claim.  *See Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  Thus, Artis has failed to identify any express policy.

### 2. Artis has adequately alleged a widespread practice that is unconstitutional

Nonetheless, a plaintiff need not allege an express policy to adequately plead *Monell* liability; instead, he "may show deliberate indifference through a series of bad acts creating an inference that municipal officials were aware of and condoned the misconduct of their employees." *Minix,* 597 F.3d at 832 (cleaned up). Put differently, a plaintiff may identify "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice." *Teesdale*, 690 F.3d at 834. The Seventh Circuit has noted "there can be little doubt that a practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways." *Howell v. Wexford Health Sources, Inc,* 987 F.3d 647, 655 (7th Cir. 2021).

In order to show that he is not the only one who suffered from Wexford's alleged custom or practice of cost-minimization and delayed dental treatment, Artis points to a 2014 Report from Dr. Shansky, a medical expert who was appointed to lead an audit and create a report on the healthcare provided to incarcerated individuals in Illinois state prisons. *See Lippert v. Baldwin*, No. 10 C 4603, 2017 WL 1545672, at *1 (N.D. Ill. Apr. 28, 2017) (noting that Dr. Shansky was appointed in that case). This report found problems in almost every IDOC facility, including Stateville. Salient to this case, it found that Wexford often failed to provide timely medical care and improperly managed dental care services at Stateville. Pl.'s Pro Se Complaint, Exs. at 14, Dr. Shansky's Feb. 2014 Report at

29.   Artis argues that this report establishes "a general pattern of repeated behavior." *Davis v. Carter,* 452 F.3d 686, 694 (7th Cir. 2006).

Wexford dismisses the legitimacy of the Shansky report, arguing that it is from an "unrelated case . . . authored by an unknown person on an unknown date for an unknown purpose." Def Wexford's Mot. Dismiss at 5, ECF No. 74. Wexford further asserts that the report should be disregarded because it is hearsay.  *Id.* On a motion to dismiss, however, the Court does not evaluate the quality of the evidence alluded to by an allegation.  On the contrary, the Court merely takes all allegations as true before deciding if they plausibly state a claim.  *See Alam*, 709 F.3d at 665–666; *Williamson*, 714 F.3d at 443–44 (holding that the district court properly considered witness statements memorialized in police investigative reports that plaintiff had attached to the complaint when ruling on a motion to dismiss); *Custom Aluminum Prods., Inc. v. AGC Flat Glass N. Am., Inc.*, No. 10 C 3611, 2010 WL 4781457, at *6 (N.D. Ill. Nov. 17, 2010) ("[E]videntiary issues are not properly before the court at the motion to dismiss stage.").

Therefore, the inquiry is whether the report reasonably establishes "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice." *See Teesdale*, 690 F.3d at 834.  Here, it does.  Taken as true, the report indicates a widespread pattern of failure to address inmates' urgent dental needs, such as oral pain, toothaches, and swelling, in timely manner. *See, e.g.*, Pl.'s Pro Se Complaint, Exs. at 20, Dr. Shansky's Feb. 2014 Report at 34, ECF No. 1.  And the report asserts that, under Wexford's policies, no examination of

soft tissues or periodontal assessment was done as part of the dental treatment process. Pl.'s Pro Se Complaint, Exs. at 17, Dr. Shansky's Feb. 2014 Report at 32. These allegations make it reasonable to infer that Wexford did indeed have a widespread practice that included "refusing or delaying dental treatment, ignoring prisoner requests for dental care, and failing to create policies competent to treat patients' serious medical needs." Compl. ¶ 38. As such, Artis's complaint plausibly alleges that Artis's experience was "something greater than a mere isolated event." *Davis,* 452 F.3d at 694. Of course, Wexford is free to argue at summary judgment or trial that this report does not support such an inference, or that the report should not be considered because it is hearsay, but those questions are not properly before the Court on this motion.

### 3. Artis has adequately alleged a causal link between Wexford's practice and his harm

In addition to pleading the existence of a widespread practice, Artis "must also offer evidence of causation: that the unconstitutional custom, policy, or practice at the Jail was the moving force behind the constitutional deprivation." *Daniel*, 833 F.3d at 736 (cleaned up).

Wexford argues that, because Dr. Garg was employed by IDOC, not Wexford, there is no causal link between any Wexford practice and the harm Artis suffered.[4]

---

[4]     The Court finds inapposite Wexford's citation to *Minix*, 597 F.3d at 833, for the proposition that a corporate health care provider that contracted with the county jail to provide inmate health care cannot be held liable for actions of individuals it did not employ. There, as here, the court focused on the nature of the alleged practice, not the actions of individual actors. *See id.* (holding that the plaintiff "failed to produce evidence that any unconstitutional practice by [the health care provider] in this case was the 'direct cause' of [the inmate's harm]"). And in that case, the plaintiff did not allege that the healthcare

But Artis clearly alleges that Wexford, not IDOC, "promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville," and that IDOC employees like Dr. Garg implemented these policies when providing dental treatment to inmates. Compl. ¶ 5; *see also* Pl.'s Pro Se Complaint, Exs. at 15, Dr. Shansky's Feb. 2014 Report at 30 (noting that one Stateville dental provider was employed by IDOC and the rest by Wexford). The Court must take that allegation as true at this stage.

Furthermore, because there is no *respondeat superior* liability under § 1983, Wexford cannot be held responsible for Dr. Garg's actions regardless of whether she is Wexford's employee. But Wexford can be held liable if it endorses "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice." *See Teesdale*, 690 F.3d at 834. And the Seventh Circuit has emphasized that *Monell* liability can attach even where *no* individual is directly responsible for a plaintiff's harm, so long as an institution's unconstitutional practice caused it; thus, the focus is on the practice, not who implemented it in any particular case. *Cf. Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 799 (7th Cir. 2014) (noting that a plaintiff may be "the victim not of any one human being's deliberate indifference but of a system of medical care that diffuse[s] responsibility for his care to the point that no single individual [is] responsible for seeing that he receive[s] the care he need[s] in a timely way"); *Hildreth v. Butler*, 960 F.3d 420,

---

provider set policy or knew of and condoned the practices of individuals employed by the jail to treat certain medical needs of the inmates. *Id.*

437 (7th Cir. 2020) (Hamilton, J., dissenting) ("The law should not ... reward divided responsibility and deliberate ignorance by those who control prisoners' only access to health care."). Thus, the Court simply considers whether Artis's complaint demonstrates that Wexford's allegedly unconstitutional practice was "the moving force behind the constitutional deprivation." *Daniel*, 833 F.3d at 736 (cleaned up).

Before Artis's appointment on July 7, 2017, he recognized he was overdue for a cleaning, but his condition had not yet reached a severe level. Compl. ¶ 12. It was because of the inattention during the subsequent months that his conditioned worsened dramatically, eventually to the point where he was unable to consume many foods and beverages. *Id.* ¶ 21. Thus, he has presented a "clear link" between Wexford's alleged practice of delayed dental treatment and his injury." *See Daniel*, 833 F.3d at 736.

As such, Artis has alleged facts that plausibly indicate Wexford had a widespread practice of providing inadequate and delayed dental care, and this practice, in turn, was the "moving force" behind Artis's constitutional deprivation. Wexford's motion to dismiss is therefore denied.

## IV.    Conclusion

For the foregoing reasons, Artis has adequately alleged facts that "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Thus, Defendants' motions to dismiss for a failure to state a claim are denied.

**IT IS SO ORDERED.**                    **ENTERED: 9/2/21**

_____
**John Z. Lee**
**United States District Judge**

21